## Mary A. Duvall vs. The Baltimore and Ohio Railroad Company.

*Railroad company—Accident at Crossing—Negligence—Escape of Steam—Evidence.*

While a freight train of the defendant was standing on the track at a station, near a public crossing, waiting for telegraphic orders to move, the plaintiff, on horseback, rode up, saw the flagman by the side of the crossing with his flag furled, thus indicating that no danger to persons desiring to cross the track was to be apprehended from the movement of the train, and attempted to cross, and while in the act of crossing there was a sudden escape of steam from an automatic safety valve attached to the engine, which frightened her horse and she was thrown to the ground and injured. It was shown that the defendant's engines were gauged to carry a certain pressure of steam, and when this was

Duvall *vs.* Baltimore and Ohio Railroad Co.

reached the steam escaped through the safety valve; and that a full pressure of steam was required for the movement of the train going up the high grade from where it was standing. HELD:

1st. That the defendant was not guilty of negligence, and the plaintiff was not entitled to recover for the injuries she sustained.

2nd. That the fact that there was no one on the train at the time, did not affect the question, it being shown that the point at which the steam escaped, was fixed before the engine left the company's shops, and neither the engineer nor the fireman had any control over it.

Evidence to show that an appliance in general use on railroads known as a "muffler," by which the noise caused by the escape of steam through a safety-valve is to a certain extent suppressed, was not used by the defendant, was inadmissible.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

*First Exception.*—The plaintiff on cross-examination asked a witness of the defendant the following question: "Is there any appliance in general use by railroad companies by which the noise produced by the 'popping-off' of steam from the safety valve of engines, as testified by you, can be suppressed or greatly reduced?" the plaintiff offering to show by witness that there was an appliance in general use on railroads known as a "muffler," by which the noise produced by safety valves "popping-off" is suppressed.   The defendant objected to the admission of the proof offered, and the Court (JONES and SMITH, J.) sustained the objection.   The plaintiff excepted.

*Second Exception.*—This exception was taken to the rejection of the plaintiff's prayers, seven in number, which need not be inserted, and to the granting of the defendant's prayer for an instruction to the jury that the plaintiff had offered no evidence under the pleadings in

the cause legally sufficient to show negligence on the part of the defendant, or its agents, to warrant a recovery in this action.

The verdict and judgment were for the defendant, and the plaintiff appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, McSHERRY, and BRISCOE, J.

*Harry M. Clabaugh,* for the appellant.

*George Dobbin Penniman,* and *W. Irvine Cross,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

We agree with the Court below that there is no evidence in this case from which the jury could fairly and reasonably find negligence on the part of the defendant company. Its freight train was standing on the track at Mount Airy Station, near a public crossing, waiting for telegraphic orders to move. The plaintiff, on horseback, rode up to the crossing, saw the engine on the track, and saw the flagman standing by the side of the crossing, with his flag furled, thus indicating there was no danger to be apprehended from the movement of trains to persons desiring to cross the track; and while the plaintiff was in the act of crossing the track, there was a sudden escape of steam from an automatic safety valve attached to the engine, in consequence of which her horse was frightened, and she was thrown on the ground and injured. The defendant's engines are gauged to carry a certain pressure of steam before they are put on the road, and when the pressure reaches this point the steam escapes through the safety valve, acting automatically, and neither the fireman nor engineer has any control over it.

This, in short, is the plaintiff's case, and if so, there is no evidence, it seems to us, from which negligence can fairly be imputed to the defendant. Its train was lawfully on its track,—this cannot be disputed,—and the noise which frightened the plaintiff's horse was caused by the escape of steam through an automatic valve,—an attachment which it had the right to use in operating its engine. But then it is said, the plaintiff had the right to cross the defendant's track. This is true, and the case then is one in which two parties have equal rights, in the exercise of which, injury may result to one of them, with or without liability, according to the conduct of each.

It was, no doubt, the duty of the defendant, in the management of its train and engine, to exercise reasonable care and prudence to avoid injury to the plaintiff and to others crossing its track. But to hold the defendant liable, there must be some evidence of negligence. Now, it was argued there was negligence in permitting the pressure of steam to reach a point at which it escapes through the safety valve, while the train was standing on its track near a public crossing; but to this we cannot agree. Here was an engine attached to twenty-eight freight cars, going up a high grade, requiring a full pressure of steam. It had reached the station, waiting to move at a moment's notice. To have slackened the fire, (and this was the only way by which the pressure could have been reduced,) would have been to deprive the engine of a pressure of steam absolutely necessary to its movements. The pressure of steam, under such circumstances, must be left to the *judgment and discretion of the engineer.* It is a mistake to assume that the point at which the steam escapes is the danger point. On the contrary, it is one far below the danger point; it is one at which from an abundance of caution the steam is permitted to escape in order to avoid all possible risks.

When the train reaches a station and is waiting for orders to move, the pressure must necessarily increase, and the noise caused by the escape of steam through an automatic safety valve, must, under such circumstances, be considered as a noise necessarily incident to the movement and operation of the engine. But then it is said there was no one at the time on the engine. How could this affect the question? The point at which the steam escapes is fixed before the engine leaves the company's shops, and over it, neither the engineer nor fireman has any control. So, it seems to us, there is no evidence here to prove, that the defendant did anything which it ought not to have done, or omitted to do anything, which under the circumstances it ought to have done.

We agree also with the ruling of the Court in regard to the evidence offered in the first exception. Here the plaintiff offered to prove by the witness, that there was an appliance in general use on railroads known as a "muffler," by which the noise caused by the escape of steam through a safetyvalve, is to a certain extent, suppressed. This evidence was offered for the purpose of proving negligence on the part of the defendant in not using such an appliance. Now, the duty of a railroad to its passengers, for the safe carriage of whom it is bound to exercise the highest degree of care, may require it to adopt such improved appliances as have been found after a fair and thorough trial to contribute to the safety of railroad operations, and which can be practically used. But we are not now dealing with an injury to a passenger, but to a person attempting to cross the defendant's track, and towards whom it was the duty of the defendant to exercise reasonable care and prudence to avoid injury. The noise which frightened the plaintiff's horse was caused by the escape of steam through a safety valve attached to the engine, an appliance in ordinary use and attached to all the defendant's engines. And we are not

prepared to hold, that it was the duty of the defendant towards persons crossing its tracks, to use every possible contrivance that human ingenuity might .devise for the purpose of suppressing noises caused by the escape of steam, or from the movement of trains. We have been referred to no case, which goes to this extent, nor do we think that such a contention can be supported on any sound principles. We must therefore affirm the judgment below.

*Judgment affirmed.*

(Decided 24th March, 1891.)