## THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY *vs.* MARY BURKHARDT AND MICHAEL BURKHARDT.

*Negligence—Escaping Steam from Engine Frightening Horse at Railway Crossing.*

While plaintiff was driving across defendant's railway tracks at a road crossing her horse became frightened by the noise of steam escaping from a shifting engine which stood a few feet from the crossing, in consequence of which the horse ran away and plaintiff was thrown out of the vehicle. *Held,* that since there was no evidence that the noise made by the escaping steam was unusual or unnecessary, or that there was any neglect of duty in the position or management of the engine, there was no legally sufficient evidence of negligence on the part of the defendant to be submitted to the jury.

Appeal from the Court of Common Pleas. At the trial the plaintiff offered the following prayers:

*Plaintiff's 1st Prayer.*—The Court instructs the jury that if they find from the evidence that the plaintiff, Mary Burkhardt, was driving down the Mt. Carmel road where it crosses the tracks of the P., W. & B. Railway Company, and that she waited until the safety-gates had been opened, and then drove upon the defendant's track, and while there defendant's servants who were in control of one of the defendant's engines so near crossing as to be likely to frighten passing teams, negligently, carelessly and unnecessarily allowed such an amount of steam to escape from said engine that the plaintiff's horse became frightened, ran away and injured the plaintiff, then their verdict must be for the plaintiff, provided they find that the plaintiff was guilty of no negligence at the time of the accident. (Granted).

*Plaintiff's 2nd Prayer.*—The Court instructs the jury that if they find from the evidence that the plaintiff drove down the Mt. Carmel road to the point where the tracks of the P., W. & B. Railway Company crossed said road, and at-

tempted to cross, but that the gates were put down and she turned and waited until the gates were again opened and the flagman either signalled or called to her to come, whereupon she drove upon the defendant's tracks, when her horse became frightened and ran away and injured the plaintiff, by reason of the negligence of defendant's servants who were in control of defendant's engine at or so near said crossing as to be likely to frighten passing teams, negligently, carelessly and unnecessarily allowing steam to escape from said engine, then their verdict must be for the plaintiff, if they further find that the plaintiff was exercising reasonable care at the time of the accident.    (Granted).

And the defendant offered five prayers on its part :

*Defendant's 1st Prayer.*—That the plaintiffs have offered no legally sufficient evidence that the injury complained of was caused by any negligence on the part of the defendant or its servants, and therefore the verdict of the jury must be for the defendant.    (Rejected).

*Defendant's 2nd Prayer.*—That by the uncontradicted evidence in this case it appears that the injury complained of was not caused by any negligence on the part of the defendant or its servants, and therefore the verdict of the jury must be for the defendant.    (Rejected).

*Defendant's 3rd Prayer.*—That the burden of proof is upon the plaintiffs to show that the injury complained of was caused by the negligence of defendant, and unless the plaintiffs shall so satisfy the jury by the preponderance of proof, the verdict must be for the defendant.    (Granted).

*Defendant's 4th Prayer.*—If the jury find from the evidence that the plaintiff's horse became frightened at the escape of steam from the defendant's engine, and that at the time he became so frightened the engine and the cars attached thereto were in motion as testified by the defendant's witnesses, and that the said escape of steam was the natural result of the work which the said engine was required to do in moving the said cars, then the plaintiff cannot recover, and the verdict of the jury must be for the defendant.    (Granted).

*Defendant's 5th Prayer.*—That there is no proof in this case that such escape of steam as there may have been was more than was necessarily incident to the work in which defendant's engine was engaged, and therefore the verdict of the jury must be for the defendant.　(Rejected).

The Court below (WRIGHT, J.) granted the plaintiff's prayers and the third and fourth prayers of the defendant, and rejected defendant's first, second and fifth prayers.

The jury returned a verdict for plaintiff for $1,000.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS, BOYD and RUSSUM, JJ.

*John J. Donaldson* and *Charles H. Carter*, for the appellant.

The proof on the part of the plaintiffs was simply that the horse was frightened by the escape of steam from the engine, a usual and necessary incident to the use of a machine of that kind, but there was no evidence, and no attempt to offer any, that such escape was caused by the negligence of those in charge.　Such proof of negligence was an essential part of the plaintiff's case. *Frech's case,* 39 Md. 576.; *Foy's case,* 47 Md. 76, 86 ; *Burns' case,* 54 Md. 113 ; *Miller's case,* 58 Md. 221, 224 ; *Barnard's case,* 60 Md. 555, 559 ; *Stebbing's case,* 62 Md. 515 ; *Savington's case,* 71 Md. 590, 599 ; *Pumphrey's case,* 72 Md. 82 ; *Duvall* v. *B. & O. R. R. Co.,* 73 Md. 516 ; *Good's case,* 75 Md. 526 ; *Grand Rapids R. R. Co.* v. *Iredson,* 34 Mich. 568 ; *Pollock on Torts,* pages 110–111, &c.

The exercise of statutory powers cannot furnish a ground of action unless it is further proved that they were negligently exercised. *Pollock on Torts, ubi supra ; Beven on Negligence* (2d. ed.), 344 ; *Geddis* v. *Baun Reservoir Co.,* 3 App., C. 455 ; *B. & P. R. R. Co.* v. *Reaney,* 42 Md. 117 ; *P., W. & B. R. R. Co.* v. *Stinger,* 78 Pa. 225 ; *Whitney* v. *Maine Central R. R. Co.,* 69 Maine, 208.

The defendant's fifth prayer and second special exception to the plaintiff's prayers go upon the lack of evidence that

there was an *unnecessary* escape of steam from the engine, and, of course, come within the principle just above considered. *Duvall* v. *B. & O. R. R. Co.*, 73 Md. 516; *Smickin* v. *S. E. Rw. Co.*, 21 Q. B. D. 453; *Truman's case*, 11 App. Cases, 45, 60, 35 Ch. Div. 423, 431; *Rex* v. *Pease*, 4 B. and Ad. 30; *Hamersmith Rw. Co.* v. *Brand*, L. R. 4, H. L. 171; *Evans* v. *Railway Co.*, 36 Ch. D. 626, 634; *Burton* v. *P., W. & B. R. R. Co.*, 4 Harrington, 252; *Norton* v. *Eastern R. R. Co.*, 113 Mass. 367; *Favor* v. *Railroad Co.*, 114 Mass. 352.

*Sidney Hall,* for the appellees.

The facts, as proved, make out a strong case of negligence against the defendant. At a public crossing, such as the record shows this to be, a traveller on the street had an equal right to the use of the crossing as the defendant, and each is required to use ordinary care to prevent accidents. Now, in this case, there is not the slightest contention that the plaintiff was in any way negligent, but it is contended that while no negligence can be charged against the plaintiff, yet the plaintiff has failed to offer any legally sufficient evidence of defendant's negligence.

We contend that it is most clearly made out by the evidence: 1st. That when the flagman called to the plaintiff to cross the track she had a right, to quote from the opinion of SMITH, J., in *Borst* v. *Lake Shore and Michigan S. R. W. Co.*, 4 Hun, 346, " She had a right to suppose that no change would take place in anything under the control of the railway company which would increase the danger, and the sudden increase in the escape of steam from a locomotive, such as to frighten her horse, makes the railway company liable." This case went to the New York Court of Appeals and was affirmed in 66 N. Y. 639. The late case of *Kalbus* v. *Abbott*, 77 Wisconsin, 621, the facts in which case are very similar to the case at bar, the Court say on page 628, " We are satisfied that the jury under all the evidence in the case was justified in finding negligence

on the part of the flagman, and on the part of those managing the engine."

2d. Apart from the negligence of the flagman in summoning the plaintiff to cross when the engine was only five or ten feet from the crossing, can there be any doubt that it was the duty of the engineer and fireman in control of the engine to so operate the engine as to prevent injuries to those lawfully using the crossing? It must be remembered that they were in full view of O'Donnell street, where the plaintiff and several other wagons were waiting to pass. From their elevated position in the cab of the engine they must have seen the plaintiff, and to allow the steam to escape out of the cylinder cocks at the sides of the engine, as described in the testimony, was the grossest negligence. The evidence for the plaintiff was to the effect that just as she got on the track in front of the engine, that at the time was only five or ten feet from crossing, "there was this puffing of steam from the sides and top all at once." Now, in the absence of proof that the sudden escape of steam was necessary for the proper management of the train, or, as in *Duvall case*, 73 Md. 516, was the result of the escape of steam through the automatic valve—how can it be seriously contended that the evidence does not show any negligence on the part of the defendant? See *Altringham Ry. Co.* v. *Fullerton*, 11 Weekly Rep. 754; *Keech* v. *Rome, &c., Co.*, 35 N. Y. St. Rep. 902; *Scagg* v. *Pres., &c.*, 74 Hun, 198; *Scott* v. *Grand Trunk Ry.*, 24 Up. Canada C. P. 347; *Presby* v. *Grand Trunk Ry.*, 66 N. H. 615.

If the evidence for the plaintiff is to be believed, those in charge of the engine were clearly negligent, passing backwards and forwards over O'Donnell street, a public and much frequented thoroughfare, they must have seen the plaintiff's wagon, and if they had been ordinarily cautious would have waited until their engine was further away from the crossing before opening the cylinder cocks and allowing the steam to puff out. *Petersburg Railway* v. *Hite* 81 Va. 767; *Gibson* v. *St. Louis & Northern Railway Co.*, 8 Mo.

Appeal, 489 ; 47 *Illinois*, 298 ; 60 *New Hampshire*, 187 ; 140 *Mass.* 81 ; *Shearmon & Redfield on Negligence*, 4th ed., sec. 426, and authorities there cited ; 1 *Thompson's Negligence*, 352.

RUSSUM, J., delivered the opinion of the Court.

This suit was instituted by the appellees, the plaintiffs below, to recover of the appellant for personal injuries alleged to have been received by the female plaintiff in consequence of the culpable negligence of the appellant's servants in the management of a " shifting engine," at a point in Baltimore City where the railroad of the appellant is crossed by O'Donnell street, otherwise known as Mount Carmel road.  The verdict was for the plaintiff, and the defendant has appealed ; and it is sought by this appeal to have corrected certain alleged errors involved in the refusal of the Court below to grant certain prayers offered by the defendant, and in granting the two prayers offered by the plaintiff. The facts of the case are few and simple.  On the 24th of April, 1894, the female plaintiff was driving, alone, to her home, by the way of O'Donnell street, or the Mt. Carmel road, and so across the railroad of appellant.  At this crossing the appellant had located its " yard "—a place for the deposit of cars and the making up of its freight trains. The female plaintiff knew this crossing very well, and had been driving the same horse over it three or four times a week for six months preceding the accident.  As she approached the crossing the gates were down, and, after waiting some little time they were raised and she attempted to cross, when the gates were again lowered until an engine, which was then moving by, with several cars attached, had passed.  She turned her horse and drove to the top of the hill and waited until they were again raised, and then started to drive across.  According to her testimony, the engine was then standing about five or ten feet from the crossing—though other witnesses say that the distance was greater—and steam was escaping from it on both sides and

at the top.    At this her horse took fright and began to run as soon as she reached the track, and, notwithstanding her efforts to control him, he ran the wagon against a telegraph pole on the street, some distance beyond the crossing, throwing her out and causing the injuries for which this suit is brought.

The only question in the cause is whether these facts show that there was culpable negligence on the part of the defendant under such circumstances as to render it liable therefor.    In solving this question it must be remembered that the defendant, equally with the plaintiff, had the right to the use of this street ; that the crossing was at or near the " yard," or the place of deposit for its freight cars ; that the "shifting or drill" engine when engaged in shifting cars to make up a train, is liable to move at any moment from point to point as the exigencies of the service may require, and that it is absolutely necessary for its proper employment that there should always be sufficient steam to enable it to properly execute the work assigned it.    The female plaintiff testifies that steam was being exhausted on both sides and at the top, but whether the amount escaping, or the noise made thereby was unusual or unnecessary she does not state.    One of her witnesses (Mr. Smith) states that the steam was escaping from the top, " just as engines do when standing," and he fixes the distance of the engine from the crossing at twenty feet.    Mrs. Sapp, the only other witness for plaintiff, fixes the distance of the engine from the crossing at fifteen feet, and states that the steam was coming from the side, as she thought, but adds, " I didn't pay much attention to that."

Now, do these facts furnish any evidence of negligence on the part of the servants of the railroad company in the management of the engine, which was proper to be subsubmitted to the jury ?    The right to operate the defendant's road, conferred by its charter, included the right to make the noises incident to the working and movement of its engines, as in the escape of steam and the noise and rat-

tling of cars, and until it is shown that the servants of the
company operated their engine improperly and carelessly,
making unusual and unnecessary noises, calculated to
frighten horses passing over the highway, there is no culp-
able negligence.    The defendant company was engaged in
the prosecution of its lawful business, and it was bound only
to exercise ordinary and reasonable care to avoid inflicting
injury upon others.    It is true there was some evidence
that the engine was exhausting steam at both sides as well
as at the top, and, as one witness stated " was puffing steam
out," making a noise, but it is a matter of common knowl-
edge that an engine cannot be moved without a sufficient
head of steam, and that the business of the " shifting " en-
gine is such that it must always have a full head of steam,
in order that its movements may be promptly executed.    To
entitle the plaintiff to recover it was essential to show that
the quantity of steam escaping from this engine, and the
noise made thereby, was unusual and unnecessary.    The
proper inquiry is, not whether the accident might have been
avoided if the company had anticipated its occurrence in
the manner that it happened, but whether, under existing
circumstances, there was any want of reasonable care and
diligence in the management of the engine to guard against
danger.    We have been unable to find in the record any
evidence of the want of reasonable care and diligence on
the part of the defendant's servants in the management of
the engine which ought to have been submitted to the jury.
Among the numerous authorities sustaining this view of the
case it is only necessary to refer to the following : *Wilkinson's
case*, 30 Md. 224 ; *Shipley's case*, 31 Md. 70 ; *Lewis' case*, 28
Md. 588 ; *Frech's case*, 39 Md. 576 ; *Burns' case*, 54 Md.
113 ; *Stebbing's case*, 62 Md. 515 ; *Savington's case*, 71 Md.
599 ; *Duvall's case*, 73 Md. 516 ; *Pollock on Torts*, 110–111 ;
*Burton's case*, 4 Harr. (Del.) 252 ; *Stinger's case*, 78 Penn.
225 ; *Lamb's case*, 140 Mass. 79.

The cases cited by the appellee do not conflict with these
views.    In each of them the facts were disputed, and,

wherever that occurs the jury is the proper tribunal to pass upon the question of negligence.   But, as has been frequently held by this Court, " where there is no proof of negligence on the part of·the defendant, or where the proof is so slight and inconclusive in its nature as to be calculated to lead the jury into wild speculation, or irrational conjecture—as it is in this case—then the duty of the Court is to grant an instruction as to its legal insufficiency. Being after a careful examination of the record, unable to discover any evidence legally sufficient to establish negligence on the part of the defendant or its servants, we are of opinion that there was error in granting the first and second prayers of the plaintiff, and in rejecting the first and second prayers of the defendant, and the judgment must be reversed, with costs above and below.

*Judgment reversed.*

(Decided June 17th, 1896).