(41 App. Div. 36.)

WILSON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.  March 24, 1899.)

1. RAILROAD CROSSING ACCIDENT—NEGLIGENCE.

For a railroad company to let an engine stand partly across the highway, with the gates up, and the engine equipped with an automatic safety valve, and without any water being put into the boiler to reduce the steam while the engine was at the crossing, is not negligence making it liable for accident caused by a horse driven in front of the engine being frightened by escaping steam.

2. SAME—CONTRIBUTORY NEGLIGENCE.

For an aged and feeble person, familiar with railroad crossings and the liability of engines to eject steam, to attempt to drive in front of an engine standing in plain sight at a crossing, resulting in his horse, with which he was unacquainted, being frightened by escaping steam, is contributory negligence.

Appeal from trial term, Oneida county.

Action by Mary Wilson, administratrix of Alexander Wilson, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a motion for new trial on the minutes, defendant appeals. Reversed.

The plaintiff's intestate, Alexander Wilson, who was also the husband of the plaintiff, was driving southerly over Genesee street, in the town of New Hartford, in company with the plaintiff, on the 8th day of October, 1894, in an open buggy. Wilson was a man about 76 years of age, in feeble health, and he was driving a single horse, which had never before been driven by him, and which he had hired for the occasion. The West Shore Railroad, which is operated by the defendant as lessee, crosses Genesee street about 1,700 feet south of the southerly boundary of the city of Utica, the main passenger depot for that city being on the easterly side of Genesee street and on the north side of the West Shore tracks, at the point where they intersect the highway. This crossing was protected by gates, which were operated by a gateman, and when these gates were down they extended across Genesee street and the tracks of an electric railroad which runs through that street. As the plaintiff and her husband approached this crossing on the day in question, a stove-repair train, consisting of an engine, three cars, a tool car, and a caboose, was standing upon the defendant's southerly side track on the westerly side of Genesee street, the engine projecting a short distance into the highway. The train stopped at this point for the purpose of enabling the tinners to make some repairs to the gateman's shanty, which was located upon the southerly side of the tracks. The engineer and fireman were in the cab of the engine, and the gates were up, as the plaintiff and her husband approached the crossing. Wilson, who was driving the horse with one hand, attempted to pass in front of the engine, and as he did so there was a sudden escape of steam from the locomotive, at which the horse became frightened, and started to run. The wagon, coming in contact with the street-car tracks, overturned, and Wilson was thrown out. After the accident it was found that he had sustained one or two bruises on the inside of the left leg. His wounds were dressed by a physician, but erysipelas ensued, and in about a week thereafter he died.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

William E. Lewis, for appellant.
William E. Seavey, for respondent.

ADAMS, J.  Upon the undisputed facts of this case we are unable to see upon what theory any negligence can be imputed to

the defendant which can be fairly said to have been the proximate cause of the accident to which the death of the plaintiff's intestate is attributed. It is true that the crossing gates were raised, but this circumstance was only an indication that no danger was to be apprehended from passing trains. It was not an assurance that drivers of restive horses might pass a stationary engine in safety, for the peril to be encountered in the effort to accomplish that feat was one which was apparent to everybody who attempted it. Scaggs v. President, etc., 145 N. Y. 201, 39 N. E. 716. Neither can it be said that the projection of the defendant's locomotive into the highway was in any degree accountable for the accident, for it is conceded that there was ample room left for the horse to pass, and that he would have passed in safety, and without experiencing any fright whatever, but for the noise occasioned by the sudden escape of steam. There is some little confusion in the evidence as to the particular part of the engine from which this steam escaped, the plaintiff testifying that she supposed it came out of the smokestack. But, aside from her testimony, the evidence on the part of both the plaintiff and the defendant establishes beyond all controversy that it came from the safety valve, which it seems was supplied with a contrivance designed to relieve the boiler of the engine from a dangerous pressure of steam which was liable to accumulate while the engine was standing. This contrivance worked automatically. It was not under the control of the engineer, and consequently, as was said in the Scaggs Case, supra, "it cannot, of course, be pretended that the use of such a device, adopted for protection from danger, and which acts automatically, * * * is negligence." It is contended, however, that the engineer might have modified, if he could not have altogether prevented, the escape of steam from the safety valve by injecting water into the boiler while the engine was standing at the crossing. The result of such management, however, would necessarily have been to reduce the steam in the boiler, and, if resorted to whenever the engine stopped, would occasion a degree of delay and annoyance which the defendant could not, with any sense or propriety, be subjected to. The precise question which we are now considering was recently decided by the Maryland court of appeals. Duvall v. Railroad Co., 73 Md. 516, 21 Atl. 496. There, as here, a train was standing at a highway crossing. The locomotive attached thereto was supplied with an automatic device to regulate the escape of steam from the safety valve. A traveler upon horseback, seeing the train, and the flagman standing near by with his flag furled, attempted to cross in front of the engine, when his horse took fright, and its rider was thrown to the ground and injured. It was held at the trial that these facts were insufficient to justify a jury in finding negligence upon the part of the defendant, and in sustaining the view entertained by the trial court the court of appeals said:

"The noise which frightened the plaintiff's horse was occasioned by the escape of steam through a safety valve attached to the engine, an appliance in ordinary use, and attached to all the defendant's engines. And we are not

prepared to hold that it was the duty of the defendant, towards persons crossing its track, to use every possible contrivance that human ingenuity might devise for the purpose of suppressing noises caused by the escape of steam or from the movement of trains. We have been referred to no case which goes to this extent, nor do we think that such a contention can be supported on any sound principles."

But, even if there were any doubt concerning this branch of the case, we are convinced that the plaintiff must fail in her action by reason of the fact that contributory negligence upon the part of her intestate was established beyond all question. She testified that both she and her husband were familiar with this crossing; that they had been over it frequently; that they had seen steam engines and cars on a great many occasions, and knew that all steam engines were liable to eject steam at times, when standing or moving. She also testified that the engine was in plain sight as they approached the crossing, and it necessarily follows that in attempting to make the crossing in the manner they did they knew they were encountering a peril which was liable to produce just the result which followed. It would be difficult, we think, to conceive of a case where the doctrine of assumed risk could be more appropriately applied than in the present action. And that both the plaintiff and her husband were conscious of the risk which they were assuming appears from the repeated declarations made by the former at the time of the accident, which, although subsequently denied by her, are established by evidence which is absolutely conclusive in its character.

The judgment and order appealed from should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.