# KING W. RILEY *vs.* THE NEW YORK, PHILADELPHIA AND NORFOLK RAILROAD COMPANY.

*Negligence—Escape of Steam from Locomotive Frightening Horse at Railway Crossing—Appeal.*

The mere fact that while plaintiff was driving across defendant's railway tracks at a crossing, in front of a standing engine, steam was discharged therefrom which frightened plaintiff's horse and caused it to run away, does not entitle the plaintiff to maintain an action therefor against the defendant, in the absence of any evidence that the noise made by the escaping steam was unusual or unnecessary, although plaintiff had been told by the engineer that it was safe to drive across the tracks.

An appeal will be dismissed when the same is not taken within two months after the date of the judgment, as required by Code, Art. 5, sec. 6.

Appeal from a judgment of the Circuit Court for Worcester County (HOLLAND and LLOYD, JJ.)

The cause was submitted to the Court on briefs by :

*Graham & Fitch* for the appellant.

The direction of the engineer and brakeman to appellant to cross over was an assurance of safety and that there would be no increase of risk, upon which he had the right to rely. *Louisville R. Co.* v. *Schmidt,* 1 Am. Neg. Rep. 435.

Where the engineer suddenly discharges a jet of steam the company is liable for an injury resulting from the frightening of a horse thereby.  2 *Wood's Railway Law,* 1332.

A railroad company in operating its trains within the limits of a city at a point where persons are accustomed to crossing its tracks, is required to use a higher degree of caution than would be neccessary in the country. *Ill. Cent. R. Co.* v: *Dick,* 91 Ky. 434; *B. & O. R. R. Co.* v. *The State, etc.,* 29 Md. 260. Whether or not the fireman, who was in charge of the engine at the time of the accident, saw the appellant with his horse in front of the engine when he opened the cylinder cocks is a question for the jury. It was his duty to look out and see that the coast was clear (especially after the invitation to appellant to cross), before opening these cocks, and presumptively he performed his duty, and if so, from his elevated position on the cab he must have seen the appellant, but chose to take the risk of frightening the horse, if, on the other hand, he did not look, he was guilty of negligence. ˙ *Cook* v. *Bal. Traction Co.*, 80 Md. 551. These, as well as the above facts referred to, it was the province of the jury to consider, and in view of them, and of the principles of law applicable to them, the assumption that there was no evidence before the jury legally sufficient to warrant their finding a verdict for the plaintiff, was, it is respectfully submitted, wholly unfounded.

The opening of the cylinder cocks on this occasion was therefore in no wise incidental or necessary to the running or working of the engine either in switching or standing still.   Nor, in the case at bar, was the steam escaping from the sides of the engine, when the appellant drove on the crossing as it was in the 83 *Md. case,* and it was not until he had gotten abreast of the engine, that the cylinder cocks were opened ; and we had a right to have the jury determine whether the opening of the cylinder cocks at that time, and under the circumstances shown, involving as it did a positive act on the part of the engineer, was an un-

necessary, careless and negligent act on the part of the appellee or its servants.   And in this connection it may be remarked that while the statement of the appellee's witnesses that the cylinder cocks were not opened at all, and that no steam escaped therefrom, is not admissible as evidence against us, we are entitled on the other hand, to the inference to be drawn from the testimony, which is, that in the judgment of these witnesses (among whom was the fireman in charge of the engine) the opening of the cylinder cocks at that time was not necessary or called for and tended to prove the negligence alleged in appellant's declaration.

*Joshua W. Miles* and *Henry L. D. Stanford,* for the appellee.

BOND, J., delivered the opinion of the Court.

This action was brought in Wicomico County by the plaintiff against the defendant company to recover for personal injuries received by himself, and for damages to his horse and carriage occasioned, as alleged, by the negligence of the defendant in causing his horse to take fright and run away while he was in the act of driving across the defendant's track near its station in the city of Salisbury.

The wrongful act or negligence charged, as the ground of the action, is stated in the *narr.* as follows : " While the defendant's engine was standing still and within about fifteen feet of plaintiff's said horse, the defendant's servant *then and there in charge and control of said engine* voluntarily, negligently, carelessly and unnecessarily, suddenly and without notice or warning to the plaintiff, caused the discharge and escape of steam from the cylinders of said engine, whereupon and whereby the plaintiff's said horse became and was frightened and ran away," &c.   The case was removed to and tried in Worcester County, with the aid of a jury ; and at its close was withdrawn from the jury upon an instruction from the Court, given at the request of the defendant, that there was no legally sufficient evidence upon

which the plaintiff could recover.   The verdict and judgment
being in consequence against the plaintiff, he has appealed,
and brought up the single question of the correctness of
this prayer.

It appears that the engine in question was lawfully on its
track, engaged in shifting cars near its station, and was stand-
ing still, about fifteen feet from the public street-crossing, at
the time plaintiff attempted to cross.     Under these circum-
stances, it became the duty of defendant's servants in
charge of said engine to exercise reasonable care and pru-
dence to avoid injury to the plaintiff, as the plaintiff, equally
with the defendant, had the right to the use of the street or
crossing.   It was, nevertheless, the right of the defendant
to make such noise as was usual and incidental to the
movement and operation of its engine at the time and place
and in the work engaged.   The above statement of the law
is well settled.    *Duvall's case*, 73 Md. 516 ; *Burkhart's
case*, 83 Md. 516.

As the question raised brings before us all the testimony
offered by the plaintiff, we will now proceed to examine it.
The plaintiff, in the first instance, offered himself as a wit-
ness and testified as follows :  " That he drove to Salisbury
and came to where defendant's railroad track crossed East
Church street, near its passenger station ; that as he ap-
proached the crossing, an engine of the defendant was
backing over the road ; that after the engine had crossed
the road it came to a stop about fifteen feet south of the
crossing, and he asked a man, who was standing at the
crossing, if it was safe to cross, and the man beckoned to
him to come across, and about that time or before, the en-
gineer had jumped from the cab of the engine and went to
a store near where the plaintiff was sitting in his carriage
and heard him ask the question if he could cross and told
him he could do so ;  he started to drive across and his horse
took no notice of the escaping steam from the top of the
engine, but that just as he got in front of the engine some-
body in the engine opened the cylinder cocks, which were

RILEY vs. NEW YORK ETC., R. CO.    57

Md.]                    Opinion of the Court.

situated on the lower side of the engine, and the steam escaped and hot water, which frightened the horse, and the horse ran away." This is the whole of plaintiff's testimony as given by himself. The next witness was John A. Parker, who testified "that he heard the plaintiff ask if it was safe to cross, and saw the man beckon him to come over ; that he saw plaintiff start over and his horse did not seem to be scared until he got in front of the engine and the cylinder cocks were turned on." George R. Bennett, the third witness, saw plaintiff " start over and heard him ask somebody if he could cross, and that when he started the engine was blowing off steam at the top valve and continued doing so while the plaintiff crossed over, and that the horse did not seem to be scared at all until he got opposite the engine, when the cylinder cocks were opened." The last witness to the accident was John Whaley, who testified that " the engine was standing still a little south of the street-crossing, and that when the plaintiff got on the crossing they opened the side valves and he saw something go up like that, making a hissing sound and scared the horse." The only other witness for the plaintiff was Frederick Ridings, who was put up as an expert on engines in general, and testified that for thirty-five or thirty-seven years he had " been running engines and was familiar with the construction of locomotives and engines, and that the cylinder cocks of an engine are put there to let the water that condenses in the cylinder out in the cylinder cocks ; that the cylinder cocks do not work automatically, but are controlled from the cab on the engine ; that there is no particular time when it is necessary to open the cylinder cocks unless the cylinder gets too much water in it and you want to empty it ; that when the engine is standing still there is no necessity at all for opening it, but when the engine is shifting or moving about, there is sometimes necessity for opening the cylinder cocks to let the water out."

The foregoing is the testimony in full as offered by the plaintiff. The defendant offered and proved by the engi-

neer, *in corroboration of plaintiff's testimony, that he was not in the cab of the engine* at the time the accident occurred, and therefore could not have turned on the cylinder cocks. The fireman testified, also without contradiction, that he did not open the cylinder cocks. As seen from the testimony set out, the plaintiff utterly failed to show that the cylinder cocks were opened by any of the men in control of the engine, or that they or any of them were in the cab at all at the time the accident happened. There is no evidence that any one was in the cab, except from what might be vaguely inferred. Nor has the plaintiff shown that the noise made by the engine at the time was of an extraordinary or even unusual character and not within its charter privileges. Among many others in this State, the case of *B. & O. R. Co.* v. *State, use of Savington,* 71 Md. 599, very fully states the rule entitling a recovery in cases of this kind: " In matters of proof we are not justified in inferring from mere possibilities the existence of facts ; there must be proof of the essential facts to fix liability upon a party charged with the commission of a wrongful act. And even a *scintilla* of evidence, or a mere surmise that there may have been negligence on the part of the defendant, will not justify the Court in submitting the case to the jury. There must be, in a case like the present, some reasonable evidence of well-defined acts of negligence, as the cause of the injury complained of; and therefore it is incumbent upon the plaintiff to give some affirmative evidence of the existence of such negligence before he can ask that the case be submitted to the jury. *Whart. Neg.,* sec. 421, and cases there cited. Or, as clearly stated by the Supreme Court, in *Parrott* v. *Wells, Fargo & Co.,* 15 Wall. 524, 537, ' no one is responsible for injuries resulting from unavoidable accident, whilst engaged in a lawful business. A party charging negligence as a ground of action *must prove it.* He must show that the defendant, by his act or by his omission, has violated some duty incumbent upon him, which has caused the injury complained

of.' Juries cannot be allowed, however great the deference conceded to their province, to make mere conjecture or speculation the foundation of their verdicts. If there be no evidence upon which a rational conclusion may be based in support of the claim of the plaintiff, the case should be withdrawn from the jury ; and to do this, is a preliminary duty of the Court."

We do not think that the plaintiff has by his proof met the requirements of law as above announced, and consequently he must fail in his action as properly determined by the Court below. We think besides that the recent case of *Burkhart*, in 83 Md., 516, as before cited, is conclusive of this. But this appeal must be disposed of on another ground, and must be dismissed as having not been taken within two months from the rendition of the judgment. The judgment was rendered on the 23rd day of May, 1899, and the order for appeal filed on the 26th of July, 1899. It follows that the appeal must be dismissed on appellee's motion, as the same was not taken within two months from the date of the judgment, as required by section 6 of Article 5 of the Code (rules 2 and 27). *Peabody Heights Co.* v. *Sadtler*, 62 Md. 145.

*Appeal dismissed with costs.*

(Decided November 23rd, 1899).