BALTIMORE AND OHIO RAILROAD COMPANY
*vs.*
MARRIE HARRIS, by Her Next Friend, Elias
Gatehouse.

*Railroads: crossings; whistle and escaping steam; fright to
pedestrians; invitation from engineer to cross.
Evidence: admissibility and sufficiency;
province of court and jury.*

An engine and train of the defendant corporation were block-
ing a street crossing, and the plaintiff in order to pass on her
way from her work, at the direction of the engineer and brake-
man, walked around in front of the engine in full view of the
engineer; when directly in front of the engine, the engineer sud-
denly blew an unusually long and unnecessarily loud blast from
the engine's whistle, and allowed an unusual and unnecessary
amount of steam to escape from the engine; the sudden noise
caused the plaintiff such fear that she fell to the ground and in
so doing received severe injuries. *Held,* that under such cir-
cumstances, the plaintiff was as much entitled to recover for the
injuries sustained as a direct result of fright caused by such
conduct on the part of the servants of the defendant, as she
would have been had the servants, in disregard of her position,
suddenly moved the train forward and injured her. pp. 269-270

The plaintiff was entitled to no greater caution on the part
of the servants of the defendant, than she would have been enti-
tled to had she crossed the tracks of the defendant on the street
crossing while the engine was standing near, and if the engineer

in answer to the signals of the brakeman, had blown only an ordinary blast from the whistle, as required by the rules of the defendant, and in the usual manner had permitted only the usual amount of steam to escape, the plaintiff would not be entitled to recover.                                      p. 270

In such a case, it was incumbent upon the plaintiff to show that she was frightened and that her fall was the result of the fright, and any evidence tending to support her statement that fright caused her fall was admissible.                    p. 272

Courts may pass upon the admissibility and legal sufficiency of the evidence, but in so doing must assume the truth of the statements offered or made, and can not undertake to determine their weight.                                      p. 270

*Decided June 25th, 1913.*

Appeal from the Circuit Court for Washington County (KEEDY and HENDERSON, JJ.).

The facts are stated in the opinion of the Court.

The following are the prayers of the plaintiff and defendant and the action of the lower Court thereon:

*Plaintiff's First Instruction.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence in this case that on the 20th day of October, 1911, she was traveling along and upon the Williams street crossing of the defendant company in the City of Cumberland, Maryland; that said Williams street crossing was then and there a public crossing of said city, and that the said crossing was at said time and place blocked by an engine and train of the said defendant company, standing over the whole of said crossing; that the plaintiff waited several minutes for the said train to move off of said crossing so she could pass over the same, and that while so waiting for said train and engine to

move off of said crossing the agents and servants of the
defendant then and there in charge of said train requested
and invited the plaintiff to pass around the front of said
engine; and further find that the plaintiff and her companion,
in pursuance of said request and invitation, if the jury find
the same, started to cross around in front of said engine, and
that while the plaintiff was crossing over the track upon
which said train and engine was then and there standing, and
about five feet in front of said engine, the said agents and
servants of the defendant company caused the whistle of
said engine to be blown in an unusual and unnecessary man-
ner, and at the same time caused an unusual and unneces-
sary amount of steam to escape from the cylinder cocks of
said engine, and if the jury further find that as a result of
the blowing of said whistle in such manner or the escape of
the steam in such amount, the plaintiff was then and there
greatly frightened, and if they further find that the plain-
tiff then and there fell upon one of the rails of said track as
a natural and probable consequence of said fright and was
thereby injured, the plaintiff is entitled to recover.    Pro-
vided, the jury further find that in passing around in front
of said engine and at the time of the alleged injury the plain-
tiff was in the exercise of due care and caution on her part.
(*Granted.*)

*Plaintiff's Second Instruction.*—If the jury find for the
plaintiff in this case, then in estimating the damages they
are entitled to take into consideration the expense to which
the plaintiff has been subjected by reason of her injuries and
they are also entitled to take into consideration the plaintiff's
state of health and physical condition prior to her injuries
in consequence thereof; and they may also consider the ques-
tion as to whether the injuries will be permanent in their
effect, and they may also consider the physical and mental
anguish which the plaintiff has suffered in the past or is likely
to continue to suffer in the future as a consequence of said

BALTO. & OHIO R. R. CO. vs. HARRIS. 257

Md.] Prayers.

injuries, and may award her such sum as in their judgment will be an adequate compensation for the injuries which she has sustained and the expenses to which she has been subjected. (*Granted.*)

*Defendant's First Prayer.*—The Court instructs the jury that under the pleadings in this case there is no legally sufficient evidence to entitle the plaintiff to recover, and their verdict must be for the defendant. (*Rejected.*)

*Defendant's Second Prayer.*—The defendant prays the Court to instruct the jury that even if they find that the train of the defendant mentioned in the evidence was blocking the crossing at Williams street in the City of Cumberland for such time as is prohibited by the ordinance of the said city offered in evidence, and that the plaintiff was told by an employee of the defendant to go around in front of the engine of said train, and that the plaintiff by reason of said directing did go around in front of the said engine of said train, and that while the plaintiff was crossing the tracks upon which the said train was standing, about five (5) or six (6) feet in front of the engine thereof, if the jury so find, the employees of the defendant in charge of the said engine blew the whistle and opened the cylinder cocks thereof, thereby causing a large amount of steam to be transmitted therefrom, if the jury so find, and that by reason thereof the plaintiff was frightened, and by reason of said fright. fell and struck her face upon the rail of the said track, and thereby suffered the injury complained of, still the plaintiff is not entitled to recover, unless the jury shall further find that the blowing of the whistle in the manner in which the same was blown, as found by the jury, was unnecessary and not in accordance with the rules and regulations of the defendant, if the jury find that the defendant had prescribed rules and regulations in reference thereto, or that said whistle was blown in an unusual or negligent manner, or that the opening of the cylinder cocks and letting off of steam at said time was not reasonably necessary for the proper conduct of the business of the defendant. (*Granted as modified.*)

*Defendant's Third Prayer.*—The jury is instructed that the plaintiff is not entitled to recover unless they shall believe from the evidence that the blowing of the whistle in the manner the jury may find the same was blown, or the letting off of steam spoken of in the evidence was unusual, or negligent and not reasonably necessary in the conduct of the business of the defendant, and is further instructed that the burden is upon the plaintiff to satisfy them by a preponderance of the evidence that the said blowing of the whistle and said blowing off of the steam was unusual, or negligent and not reasonably necessary in the conduct of the business of the defendant. (*Granted as modified.*)

*Defendant's Fourth Prayer.*—The jury is instructed that even if they find that the blowing of the whistle and letting off steam spoken of in the evidence was unusual, negligent and not reasonably necessary in the conduct of the business of the defendant, and that the plaintiff was frightened thereby, and that by reason of said fright, the plaintiff fell and sustained the injury complained of, still the plaintiff is not entitled to recover unless they believe from the evidence that the said fright of the plaintiff and the said injury was natural and probable results of the said blowing of the said whistle, or the said letting off of steam or both of them together, and is further instructed that the burden is upon the plaintiff to show by a preponderance of the evidence that the said fright and injury were natural and probable results of the said blowing of the said whistle or the said letting off of steam, or both together, as aforesaid. (*Granted.*)

*Defendant's Fifth Prayer.*—The defendant prays the Court to instruct the jury that if they believe that at the time of the accident the plaintiff was nineteen years of age and in good health, and had been for about eight (8) months previous thereto accustomed to pass over the Williams street crossing of the defendant nearly every day, and had frequently heard the engines of the defendant whistle when in close proximity thereto, and had frequently heard and seen

the said engine blow off steam when in close proximity there-
to, even if they find that the employees of the defendant,
on the day of the injury complained of, told the plaintiff
to go around in front of the engine of the train of the
defendant, which train was then and there blocking the said
Williams street crossing, if the jury shall so find, and that
while the plaintiff was passing in front of the said engine
and was about five (5) or six (6) feet in front thereof, if the
jury so find, the employees of the defendant blew the whistle
of the said engine and opened the cylinder cocks thereof,
thereby letting off steam, if the jury so find, and further
find that by reason thereof the plaintiff was frightened, and
that by reason of said fright the plaintiff fell and thereby
sustained the injury complained of, that the injury so sus-
tained by the plaintiff was not a reasonable and natural
result of the said blowing of the said whistle, or the blowing
off the said steam, and the plaintiff is not entitled to recover,
even if the jury should find that the said blowing of the
whistle and the said blowing off of steam, or either of them,
were unusual, unnecessary, or negligent, unless the jury
should further find that the said blowing of the said whistle
or the blowing off of steam were done by the agents or
employees of the defendant for the purpose of frightening
the plaintiff, and to further instruct the jury that there is
no evidence in this case legally sufficient to enable them to
find either that the said whistle was blown or that the said
steam was let off for such purpose. (*Rejected.*)

*Defendant's Sixth Prayer.*—The defendant by its attor-
neys prays the Court to instruct the jury that if they believe
from the evidence that the plaintiff, Marie Harris, while
walking over Williams street crossing of the Baltimore and
Ohio Railroad in Cumberland, found the crossing blocked
and obstructed by the cars of the defendant, and that she
waited for five minutes, or more, and that then the agents or
servants of the defendant told her to go around in front of the
engine, if the jury so find, and that she then left the board

crossing of said Williams street, and with her companion, Miss Trieber, walked along the right of way of said railroad, off of the said crossing between the train of the defendant and other cars, if the jury so find, the length of a car or two and the tender and engine of said train, around in front of said engine, if the jury shall so find, and that when she neared a point on the track of the defendant's railroad on which the engine of said train stood, the engineer of said engine blew two blasts of the whistle of said engine in regular acknowledgment of a proper signal of the brakeman of said train to go forward, to cut the said train, to permit travelers on said crossing to pass over the same, if the jury shall so find, and that the engineer prepared to start said engine forward in the regular, proper performance of his duty to cut said train, if the jury shall so find, and that the said blowing of the whistle and the expulsion of steam was not done in an unusual, or unnecessary manner, but in the usual, necessary way to properly perform his duties as the servant of the defendant, and that the plaintiff while so crossing in front of said engine became frightened by the said blast of the whistle and the expulsion of the steam from said engine, if the jury shall so find, and fell and was injured, if the jury shall so find, she cannot recover in this case, and their verdict must be for the defendant. (*Rejected.*)

*Defendant's Seventh Prayer.*—The jury is instructed that if they find from the evidence that when the plaintiff attempted to walk over Williams street crossing of the defendant in Cumberland, she found the said crossing blocked by a train of the defendant, extending west of said crossing with an engine attached, a distance of eighty (80) or one hundred (100) feet, if the jury so find, and that the defendant's agents told her to go around in front of said engine, if the jury shall find that they told her, and that while she was doing so and was in front of said engine on the same track on which it stood, the agents or servants of the defendant

blew the whistle of said engine and caused the steam to be
expelled from the cylinders thereof, and that the plaintiff
was frightened thereby, and caused to fall and be injured,
yet the plaintiff cannot recover unless they further find that
the blowing of said whistle and the expulsion of said steam
was done in such an unusual and unnecessary way as to
show a reckless disregard of the effect thereof upon the
plaintiff. (*Rejected.*)

*Defendant's Eighth Prayer.*—The jury is instructed that
if they find from the evidence that the plaintiff was in a
place of safety on the Williams street crossing of the defend-
ant's railroad, before the injury complained of, and that she
left said crossing without any invitation or direction of
defendant's servants or agents, and went upon the right of
way of defendant around in front of the said engine, and
was frightened by the blast of the whistle and the escape of
steam caused her to fall and suffer injury, then she directly
contributed to her own injury by her own negligence and
their verdict must be for the defendant, even if they further
find that the whistle was blown in an unnecessarily loud
way and the steam permitted to escape from the engine in
unnecessarily large quantities. (*Granted.*)

*Defendant's Ninth Prayer.*—The jury is instructed that
if they find from the evidence that when the plaintiff
attempted to pass over the Williams street crossing of the
defendant in Cumberland she found the same blocked by a
train of defendant's cars, if the jury shall so find, and she
waited there for five minutes or more, and that one of the
servants of the defendant then told her to go around in
front of the engine, if the jury shall so find, and that she
then left the crossing, walking between said train and other
cars on the next track for 40 feet or more, if the jury shall
so find, and proceed to go around in front of said engine, if
the jury shall so find, and that when she was crossing the
track on which said engine stood, the engineer blew a blast
or blasts of the whistle of said engine and opened the steam

cocks of the cylinders thereof, from which large amounts
of steam were expelled and that the plaintiff was frightened
thereby and fell and was injured, yet their verdict must be
for the defendant, if they further believe that the use of
the whistle and the steam by the engineer was a reasonable
and proper use thereof, and necessary in the proper opera-
tion of the said engine, in the conduct of defendant's busi-
ness. (*Rejected.*)

*Defendant's Tenth Prayer.*—The defendant prays the
Court to instruct the jury that there is no evidence in this
case legally sufficient to enable them to find that either the
blowing of the whistle or the letting off of steam spoken of
in the evidence was done by the employees of the defendant
for the purpose of frightening the plaintiff. (*Granted.*)

*Defendant's Eleventh Prayer.*—The jury is instructed that
the burden of proof is upon the plaintiff in this case to show
by preponderance of the evidence that the negligence of the
defendant was the direct and proximate cause of the injury.
(*Conceded.*)


The cause was argued before BOYD, C. J., BURKE,
THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE,
JJ.


*Geo. A. Pearre* (with whom were *J. Clarence Lane* and
*H. H. Keedy* on the brief), for the appellant.


*Walter C. Capper* (with whom were *J. Philip Roman* and
*Frank G. Wagaman* on the brief), for the appellee.


THOMAS, J., delivered the opinion of the Court.

The declaration in this case charges that the defendant
maintained a number of tracks across Williams street, one
of the public streets of Cumberland, Maryland, and that on
or about the 20th day of October, 1911, the equitable plain-

tiff "was lawfully traveling along said Williams street, and
using due care and caution, and approached the crossing of
the defendant over said" street, which crossing "at that time,
was partially occupied by an engine of the defendant com-
pany, in charge of an engineer and fireman of the defendant,
who were then and there acting as its servants and agents;
that the plaintiff stopped at said crossing and waited for a
long time" for the "defendant, its servants and agents, to
remove said engine off said crossing so that she might pur-
sue her way over said crossing to her work at the Footer's
Dye Works, in Cumberland; that after she had waited for
more than five minutes for the said engine to be taken off of
the said crossing, the engineer and fireman of the defendant,
in charge of said engine, called to her, and told her to pass
around in front of said engine, and cross on over the cross-
ing, and that thereupon the plaintiff, using every care and
caution on her part, started across the said crossing, upon the
solicitation and invitation of the agents and servants of the
defendant so in charge of said engine,—and had proceeded
so far as to be upon the track upon which said engine was
then and there standing, and directly in front of said engine,
when, without any notice or warning of any kind" from the
agents of the defendant in charge of the engine, or any other
person, "the whistle of said engine was suddenly blown by
the said engineer or fireman in charge of the same, in an
entirely unreasonable manner, causing a loud and shrill
sound, while the plaintiff was directly in front of said
engine, and at the same time the said agents and servants of
the defendant—in charge of said engine, and knowing the
position of the plaintiff directly in front of said engine, un-
lawfully, negligently and carelessly, without any warning
whatever to the plaintiff, opened the cylinder cocks on said
engine, and then and there permitted an unusual and unnec-
essary quantity of steam to escape from the said engine, and
an unusual and unnecessary noise to be made by the escape
of said steam, and that by reason of the said careless and

negligent, unusual and unnecessary whistling, noise and escape of steam," caused by the agents of the defendant, "in charge of said engine and acting in the line of their employment, while the plaintiff was directly in front of said engine, the plaintiff became shocked with fear, so that she became and was unconscious, and lost control over her actions, which caused her to fall down upon the railroad track in front of said engine, and that as she fell, her mouth struck one of the rails of the track upon which said engine was standing, and her front teeth were broken and injured, and her jawbone was broken and splintered, etc." It further charges that the injuries complained of were directly caused by the negligence of the servants of the defendant "in blowing the whistle of said engine on said crossing at said time and place, in an unlawful, unusual and unnecessary manner, and in negligently and carelessly causing an unusual and unnecessary amount of steam and noise to escape from said engine," while she, without any notice to the plaintiff and to the knowledge of the said servants of the defendant, was passing in front of said engine; that "the said escape of steam and the said blowing of the whistle were such as were calculated to frighten a woman crossing a railroad track directly in front of the engine, and that these facts were well known" to the servants of the defendant in charge of said train," and that her said injuries ought to have been foreseen "by said servants, agents of the defendant" as a natural and probable consequence of the negligence of the defendant—in so negligently and carelessly blowing the whistle of said engine, and allowing steam and noise to escape in an unnecessary and unusual manner as aforesaid."

At the trial the plaintiff testified that she was twenty years of age, lived with her aunt in Cumberland and was employed as a presser at Footer's Dye Works; that she went home to dinner on the 20th of October, 1911, and that on her way back to work, she and her companion, Miss Margaret Trieber, went down Williams street; that when they reached the

crossing a train was on the crossing, and after waiting there over five minutes, a brakeman, who was on the same side the train she was, and below the crossing, told the engineer, who was in the cab and on the same side of the train, to cut the train, and that the engineer hollowed back to the brakeman, "If there are only two let them walk around," and that the brakeman then motioned to them to walk around; that when the brakeman told her that, she thought it perfectly safe, and she and her companion then walked up the track between the engine and some cars standing on the next track the distance of the length of a car, the cab and engine, and as she was crossing in front of the engine, and was on the track the engine was on, about five or six feet in front of the engine, "the engineer blew an extremely loud whistle and blew steam from the cylinder cocks, and it covered the front of the engine and so scared me that I just thought the engine was going to run over me and I fell unconscious on the track, my upper jaw striking the track, and I laid there unconscious until Miss Trieber picked me up." She also stated that the engineer saw them as they passed the cab, and further testified: "I have seen steam coming out of engines and heard whistles blow at this same crossing. I see them every day;" that she had heard engines "blow lots of times" when she was five feet away from them, and that the whistles she had previously heard were not near so loud as the whistle blown when she passed around the engine at the time of the accident, and which she described as "one loud shrill blast, an extremely loud whistle, louder than I ever heard before."

The statement of the plaintiff as to what occurred when she reached the crossing and when they started to cross the track in front of the engine is corroborated by the testimony of Miss Trieber, who further stated: "When the whistle blew and the steam exhausted it frightened her (the plaintiff) and she fell with her face downward, striking her face against the rail towards Footer's Dye Works. The engine blew one real loud blast. I had used that crossing nearly a

year and have heard engines blow on that crossing quite often, about five times a week, probably oftener.  I would be about five or six feet from them when they blew."  When asked to tell the jury "the sound made by the blowing of that particular engine compared with the other blasts" she had heard "as to loudness," she replied, "Well, it was much stronger than any other; like a toy cornet or horn to that of larger cornets or horns," and said further, "A large quantity of steam came from around the bottom of the engine; it came from about the cylinders.  It made a great noise." Bernard Griminger, who was near the crossing and saw the plaintiff fall as she was crossing the track in front of the engine, says "then for a minute I couldn't see either of them because the steam enveloped them the blowing of the whistle caused me to look that way, it blew once, an awful shrill long blast, there was a great deal of steam."  The plaintiff produced further evidence to show that the natural and probable effect of suddenly subjecting a woman twenty years of age to a loud noise that frightened her would be, to some extent, to impair her nervous system and her control of her muscular movements, and to show the extent of plaintiff's injuries, and then offered in evidence ordinances of the City of Cumberland making it unlawful to obstruct with a locomotive, engine or car the crossing on Williams street for a longer period than five minutes, and for any owner or person in charge of an engine or locomotive to blow the whistle of such engine or locomotive, or to allow the same to be blown within the City limits except when absolutely required by the rules of the corporation or person owning or running the same, "or to avoid accident, or in any case to blow a full valve whistle."

The defendant proved that Williams street was sixty feet wide, and allowing ten feet on each side for sidewalks, the driveway was forty feet wide; that the space between the two tracks is seven feet, and that the space between the ends of the cross ties, "where you can walk," is three feet.  Harry W. Critchfield, one of the brakemen on the train, testified

that he was the middle brakeman and was at the crossing; that Smith, the head brakeman, who was on the far side of the crossing, and who at the time of the trial was in a hospital, gave him the signal to cut the train; that he "parted the hose, and not being able to see the engineer he crawled up on the cab, and as he backed down off the cab he nearly backed into two ladies; that he walked back to where the train was to be cut, and gave the engineer the signal to move ahead, and that the engineer answered him by two sounds of the whistle; that the first he saw "of the young ladies was when he backed down off of the engine"; that the crossing was blocked about four minutes, and the cut was made after the engineer sounded the whistle; that "he did not tell the young ladies to go around in front of the engine * * * did not hear the engineer say, 'If there are only two let them go around,' * * * and did not motion to them to go around"; that the only time he saw the girls was when he backed down off the engine; that when they passed him they were between two trains on the defendant's property, and he did not know where they were going. W. M. Foster, the engineer, testified that when he first saw the plaintiff and her companion he was on the engine and they were down on the right side of the engine, going towards the head of the engine; that the engine, tank and one or two cars were beyond the crossing; that he did not hallow back to the brakeman, "If there are only two girls let them walk around in front of the engine"; that he did not see them in front of the engine, and did not know where they were going when he saw them pass the side of the engine; that the brakeman was stationed at the crossing when he gave him the signal to go ahead, and that he sounded the whistle twice as an answer to his signal, because it is the rule to give two blasts in answer to a signal; that after answering the signal he remembered about the two girls being near the engine, and asked the fireman if they were around the engine and out of the way; that he supposed they were going around, but not knowing he wanted to be sure where they were, and finding that they were out of

268     BALTO. & OHIO R. R. CO. vs. HARRIS.

Opinion of the Court.     [121

the way he moved the engine ahead and cut the crossing. He further* testified that in going ahead he opened the throttle to admit steam to the cylinders, but there was no expulsion or escape of steam around the cylinders, and that he did not blow a long, shrill, loud blast; that he could not see right in front of the engine, and that after he answered the signal, before going ahead, he asked the fireman if the young ladies were out of the way, and that he replied: "Yes; they are going down here and one of them is bleeding in the mouth; she must be having a hemorrhage or something"; that he did not release the cylinder cocks, which "were operated from a lever inside the cab." The testimony of the fireman, who was on the opposite side of the cab, supports the statement of the engineer that he blew two short blasts, and he says that he did not hear the engineer say, "If there are only two girls let them walk around."

The defendant demurred to the declaration, and at the conclusion of the testimony offered a prayer to take the case from the jury. The main contention of the appellant in support of the demurrer and this prayer is that there can be no recovery for injuries resulting from fright without physical impact. That question has been so recently and carefully considered in *Green* v. *Shoemaker*, 111 Md. 69, that there would seem to be no room for further discussion. In that case the question was the right to recover for nervous prostration resulting from fright caused by continued blasting, and JUDGE PEARCE, after reviewing the cases bearing upon the question, quotes, as expressing the correct view, the statement in *Denver R. R. Co.* v. *Roller*, 100 Fed. Rep. 738, where the jury was instructed as follows: "If great fright was a reasonable and natural consequence of the circumstances in which the collision aforesaid, with the ensuing wreckage, explosion and conflagration, placed the plaintiff, and if she was actually put in fright by those circumstances, and injury to her health was a reasonable and natural consequence of such fright, and was actually and proximately occasioned thereby, the said injury is one for which damages

are recoverable." In the case at bar the injury, according
to the averments of the declaration and evidence adduced by
the plaintiff, were the result of a fall caused by the shock
and fright produced by the sudden blowing of the whistle and
escape of steam, and in *Green's case,* the learned judge who
wrote the opinion said: "If, in the case before us, the plain-
tiff had received an actual blow, * * * by a fall of herself,
caused by the alarm of the concussions, no one would ques-
tion her right to maintain this action." It is also urged by
the defendant in this connection that at the time of the
accident the plaintiff was on the defendant's right of way and
that the alleged invitation of the engineer and brakeman was
beyond the scope of their employment and does not bind the
defendant. But assuming that the engineer and brakeman
had no authority to direct or authorize the plaintiff to use
the defendant's property under the circumstances, and for
the purpose indicated, they were nevertheless in full control
of the train, and if they knew, as alleged and shown by the
plaintiff's proof, that she was in a position of peril by reason
of their invitation, they were bound to exercise reasonable
care to avoid injuring her, and their failure to do so would
render the defendant liable for resulting injuries. This doc-
trine has been so frequently announced and applied in this
State that it requires no citation of authority. The engineer
was in the cab and in control of the engine, and the cylinder
cocks were operated by a lever in the cab. Neither the rules
of the defendant nor the conduct of its business required an
unusually loud whistle to be blown at the time mentioned, and
the ordinance prohibited "in any case" the blowing of "a·
full valve whistle" within the city limits. If, as alleged and
testified to by the plaintiff's witnesses, the train in question
was blocking the crossing, and the plaintiff and her compan-
ion, in order to reach their destination, at the request or by
the direction of the engineer and brakeman, undertook to
pass around in front of the engine, and while in the act of
doing so, and when in front of and within a few feet from
the engine, the engineer suddenly blew an *unusually* and *un-*

*necessary* loud whistle, and allowed an unusual and unnecessary amount of steam to escape from the engine, we think that the plaintiff is as much entitled to recover for the injuries sustained as the direct result of fright caused by such conduct on the part of the servants of the defendant as she would have been had said servants, in disregard of her position, suddenly moved the train forward and thereby injured her. On the other hand, the plaintiff was entitled to no greater caution on the part of the servants of the defendant than she would have been entitled to had she crossed the tracks of the defendant on the street crossing while the engine was standing near the crossing, and if, as stated by the engineer and brakeman, the engineer, in answer to the singal of the brakeman, blew only two short whistles, as required by the rules of the defendant and in the usual manner, and permitted only the usual amount of steam to escape, the plaintiff was not entitled to recover. *Duvall* v. *B. and O. R. R. Co.,* 73 Md. 516; *P., W. and B. R. R. Co.* v. *Burkhardt,* 83 Md. 516; *Riley* v. *New York, etc., R. Co.,* 90 Md. 53; 33 *Cyc.* 937.

Counsel for the appellant further contends that the statements of plaintiff's witnesses are too improbable to be accepted by the Court. The relative weight of the plaintiff's and defendant's evidence is, however, a matter exclusively for the jury. In this State the Court may pass upon the admissibility and legal sufficiency of evidence, but in doing so it must assume the truth of the statements offered or made, and cannot undertake to determine their weight. The principle applied in *Baltimore Traction Co.* v. *Helms,* 84 Md. 515, and *N. C. Ry. Co.* v. *Medairy,* 86 Md. 168, cannot be applied to statements of the plaintiff's witnesses in this case.

During the trial the defendant reserved eleven exceptions to the rulings of the Court on the evidence. In the first and second exceptions the plaintiff was asked to state what caused her to fall, and to compare the sound of the whistle of the

engine at the time of the accident with the whistles of engines
she had heard on other occasions. She had the right to show
how the accident occurred, and having stated that she had
very often heard engines blow when she was only about five
feet from them, there was no objection to her comparing the
sound of the whistle that frightened her with the sound of
other whistles she had heard. There is no serious objection
to the evidence referred to in the third exception. The plain-
tiff had testified that she was familiar with the crossing in
question, and that there were eighteen or twenty tracks at
that point, and when asked, without objection, whether or
not engines were frequently on and over the crossing, she
replied, "Yes, we had to wait several times." She did not
say that she had been required to wait there *over five minutes*
several times, and we do not see how the defendant could have
been injured by her reply. The same may be said of the
statement of Miss Trieber, in the fifth exception, that the
blowing of the whistle and the "exhaust of steam" stunned
her for a while. Miss Trieber did not fall in consequence of
the shock, and as by the prayers the finding of the jury was
limited to the effect of the whistle and steam upon the plain-
tiff, it is not probable the defendant was prejudiced by this
testimony, even if it be, strictly speaking, inadmissible. What
we have said in reference to the second exception applies to
the fourth. This evidence of Miss Trieber was offered for
the purpose of showing that the whistle was unusually loud.
In the sixth exception the witness was asked to state whether
she had noticed any change since the accident in the appear-
ance of the plaintiff. Counsel for the defendant objected,
but stated that if the injury referred to her face he did not
object, but did object if it referred to her health. The answer
of the witness was, "I notice in her face, I think the left
side, her eye, her cheekbone is higher than the other one,
and her voice does not seem the same as it did before the
accident occurred. Her mouth is drawn." This answer
seems to be fairly within the qualification of the objection.

The seventh, eighth, ninth, tenth and eleventh exceptions are to questions asked Dr. Laughlin, as an expert. This witness was asked what would be the natural and probable effect upon the nervous system of a woman of suddenly subjecting her to a loud noise that greatly frightened her, "with reference to the control of her muscular movements." In answer to that question and practically the same question in the ninth exception, the witness replied that it would impair her nervous system and her control of "her muscular movements". It was encumbent upon the plaintiff to show that she was frightened and that her fall was the result of the fright, and this evidence was admissible as tending to support her statement that fright caused her to fall. The witness was not able to answer the questions in the eighth, tenth and eleventh exceptions, and there was consequently no injury to the defendant.

At the conclusion of the testimony the plaintiff offered two prayers, which were granted by the Court, and the defendant ten. The defendant's second, third, fourth, eighth and ninth prayers were granted and the others were rejected. To the granting of the plaintiff's prayers and to the refusal of the Court to grant defendant's rejected prayers the defendant excepted. By the fifth prayer of the defendant the Court was, in effect, asked to instruct the jury that if they found that the plaintiff had been using the crossing for about eight months previous to the accident, and had frequently heard the engine whistle and blow off steam when in close proximity thereto, then the injury of the plaintiff was not the natural and reasonable result of the blowing of the whistle or the escape of the steam, and she was not entitled to recover, unless the blowing of the whistle, etc., was done for the purpose of frightening the plaintiff, and by its seventh prayer it asked for an instruction that the plaintiff was not entitled to recover unless the jury found that the "blowing of said whistle and the expulsion of said steam was done in such an unusual and unnecessary way as to show a reckless disregard

of the effect thereof upon the plaintiff." These prayers ignore the effect of the evidence tending to show that the whistle was *unusually* loud, and the duty of the defendant, under the circumstances shown by the plaintiff's witnesses, to exercise reasonable care to avoid injuring her, and were therefore properly rejected. The defendant's sixth, eighth and ninth prayers, in so far as they are free from objection, are covered by its second prayer, which was granted. The reporter is requested to set out in his report of the case the plaintiff's first prayer, and the defendant's second, sixth. eighth and ninth prayers. The plaintiff's first prayer is entirely in accord with what we have said in disposing of the demurrer and the defendant's first prayer to take the case from the jury. The plaintiff's second prayer, which relates to the measure of damages, is substantially in the usual form, and we do not understand that it was objected to except upon the ground that the case should have been taken from the jury.

Finding no reversible error in any of the rulings of the Court below, we must affirm the judgment.

*Judgment affirmed, with costs.*