RESAVAGE *v.* DAVIES ET AL.

[No. 114, October Term, 1951.]

*Decided March 7, 1952.*

*Motion for rehearing filed April 7, 1952, denied April 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Harold Buchman* and *Michael Paul Smith,* with whom were *Buchman* and *Dubow,* on the brief, for appellant.

480

*Roszel C. Thomsen,* with whom were *Clark, Thomsen & Smith* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for the defendants in an action at law, after the court had sustained a demurrer without leave to amend. The declaration alleged that the plaintiff, the mother of two daughters aged sixteen and thirteen, respectively, sustained injuries through nervous shock and resulting physical injuries by reason of seeing her daughters struck and killed by an automobile owned by one of the defendants and operated by the other as his agent and servant. At the time of the accident the plaintiff was standing on the porch of her home, 1226 Forest Road, Sparrows Point; the daughters were standing on the parkway at the intersection of Route 151 and Route 20, waiting for a bus; the automobile came south on Route 151, jumped the curb and struck the children "in full view of the plaintiff". The plaintiff, "petrified with horror at the sickening scene unfolded before her and torn with anxiety, ran to the children, who were languishing in pools of blood and in a dying condition". She was confined to her bed for a considerable period as a result of the shock. There were allegations of negligence on the part of the defendants in the operation of the automobile and lack of negligence on the part of the plaintiff and her deceased children. The grounds of demurrer were that the declaration failed to allege any breach of duty to the plaintiff or to establish any cause of action on her behalf, and that the negligence alleged was not the proximate cause of the alleged injuries.

It has long been established in this state that recovery may be had for physical injuries resulting from nervous shock, even though there is no actual physical impact. *Green v. Shoemaker,* 111 Md. 69, 73 A. 688, 23 L. R. A., N. S., 667; *Great A. & P. Co. v. Roch,* 160 Md. 189, 153 A. 22; *Bowman v. Williams,* 164 Md. 397, 165 A. 182; *Mahnke v. Moore,* 197 Md. 61, 69, 77 A. 2d 923, 926; *State, use Aronoff v. Baltimore Transit Co.,* 197 Md.

528, 531, 80 A. 2d 13, 14. The appellees contend, however, that although impact is immaterial if physical injury is caused by shock arising directly from the act or omission of the wrongdoer, it is essential that there first be established a duty owed to the plaintiff and a breach of that duty. The argument is addressed to the scope of the duty owed, rather than to any break in the chain of causation. No doubt, the question of foreseeability plays a part in the result reached under either theory.

In *Green v. Shoemaker, supra,* there were cumulative shocks produced by repeated blasting in the vicinity of the plaintiff's dwelling, which on more than one occasion rocked the house, broke windows, caused plaster to fall and precipitated large rocks into the house. The court found that the actions, persisted in after notice to desist, amounted to a public nuisance. The plaintiff was a tenant in the house and thus entitled to complain of the invasion of her property rights. In *Great A. & P. Co. v. Roch, supra,* the manager of a store sent to a nervous woman customer a package containing a dead rat instead of the article ordered. The case was allowed to go to the jury on the theory of negligent mistake, although the declaration presented a case of an intentional and deliberate practical joke. In any event the wrongful act or omission was directed towards the plaintiff and not a third person. In *Bowman v. Williams, supra,* the plaintiff was standing at the window of his dwelling house when the defendants' truck ran into the side of the house below where he was standing. His two children were in the basement. There was no physical impact to the plaintiff or his children, but the plaintiff was physically injured by the shock caused by his fright and alarm for the safety of his children. The court said (p. 164 Md. 403; 165 A. 2d, p. 184): "there was imminent danger of physical contact that confronted the plaintiff, who had visible reason to apprehend that the impending peril caused by the negligent act or omission of the defendants' servants with respect to their duty

to him would not only happen but would also crush and damage the building and inflict the threatened physical injury upon his children in the basement and himself in the dining room of the house. There was no basis to differentiate the fear caused the plaintiff for himself and for his children, because there is no possibility of division of an emotion which was instantly evoked by the common and simultaneous danger of the three." Under the circumstances it was said (164 Md. p. 405, 165 A. p. 185) that "the father could have recovered whether this fright was for the safety of his children or of both himself and the children." On the question of the duty owed, however, the court stated clearly (164 Md. p. 400, 165 A. p. 183) : "The master has the right to drive the truck upon the highway, but, in the exercise of this right, the master owes a duty to the other users of the highway, and the occupants of the contiguous premises, so to operate the truck that any injury to the person or property rights of the other users of the highway and of the occupants of the contiguous premises will not be inflicted by the failure of the master to operate the truck with reasonable care and caution under the circumstances. * * * So the negligent, but not wilful, driving of the truck from the public highway through the wall of the house in which the plaintiff lived was the breach of duty which in the user of the highway the masters owed the plaintiff." Again, the court said (164 Md. p. 402, 165 A. p. 184) : "the cause of the fright was the negligent act or omission of the defendants in permitting the truck to get out of control or be driven so as to run into the house of the plaintiff. This was a breach of duty that the defendants owed to the plaintiff."

In *Mahnke v. Moore, supra,* the action was by a five year old child against the executrix of her deceased father. Moore maintained a wife and children in New Jersey, and a home in Maryland with a paramour and his illegitimate daughter. He murdered the child's mother with a shotgun in the child's presence and confined her

in the room with the mangled corpse for six days. Thereafter, he committed suicide with the same weapon in the child's presence, drenching her with his blood. It may be inferred that the child was herself in peril of physical harm by the murderer. The main question discussed was whether a child could recover in an action of tort against its parent. The existence and breach of a duty under the circumstances was assumed without discussion, although it was pointed out that "generally, the commission of murder or suicide is not a tort against an eyewitness."

In *State, use Aronoff v. Baltimore Transit Co., supra,* the plaintiff's intestate was standing inside the lobby of a store in which he was supervising the installation of plate glass windows. A truck, standing near the curb loaded with plate glass, was struck on the street side by a passing streetcar. He died from a heart attack induced by shock from seeing and hearing the crash and concern for the possible financial loss he might have sustained as a substantial owner of the plate glass company. While the decision that recovery could not be had was rested in part upon the proposition that the injury to his personal property was too remote, in the absence of any other immediate peril, the opinion closed with the statement, quoted from *Jackson v. Pennsylvania R. Co.,* 176 Md. 1, 5, 3 A. 2d 719, 120 A. L. R. 1068: "The allegations being 'insufficient to show a duty breached which was the efficient cause of the injury averred, the declaration is bad on demurrer'."

In 2, *Restatement, Torts* § 312(d) a distinction is recognized between acts intended to cause distress and those that are merely likely to do so. The *Mahnke* case may, perhaps, be distinguished on this ground. Cf. *Lambert v. Brewster,* 97 W. Va. 124, 125 S. E. 244, and *Monteleone v. Coop. Transit Co.,* 128 W. Va. 340, 36 S. E. 2d 475.

Section 312 (e) of the Restatement deals with negligent acts: "(e) On the other hand, an act, which is merely negligent as threatening an immediate harm to

484

a third person, is not negligent to another solely because of the possibility that the peril or harm of such a person may indirectly cause fear, grief or similar emotional disturbance to others because of their interest in and affection for the third person and the possibility that they may be in such a physical condition that the emotional disturbance may be physically harmful. This is so irrespective of whether the other witnessed the third person's peril or harm or is informed of it immediately thereafter or at some subsequent period, and irrespective of whether they are or are not members of the same immediate family."

Section 313 contains a caveat, however, that: "The Institute expresses no opinion as to whether an actor, whose conduct is negligent as involving an unreasonable risk of causing bodily harm to a child or spouse is liable for an illness or other bodily harm caused to the parent, or spouse who witnesses the peril or harm of the child or spouse and thereby suffers anxiety or shock which is the legal cause of the parent's or spouse's illness or other bodily harm."

We think the fundamental consideration is the extent of the duty owed, bearing in mind that "no act will be considered negligence merely because in fact it causes fright and injury through it, if it had no tendency to cause anything but fright." Bohlen, Studies in the Law of Tort, p. 289. In *Waube v. Warrington*, 216 Wisc. 603, 605, 258 N. W. 497, 98 A. L. R. 394, a case strikingly similar on the facts to the instant case, the Wisconsin court said: "the question presented is whether the mother of a child who, although not put in peril or fear of physical impact, sustains the shock of witnessing the negligent killing of her child, may recover for physical injuries caused by such fright or shock. The problem must be approached at the outset from the viewpoint of the duty of the defendant and the right of the plaintiff, and not from the viewpoint of proximate cause." The court further said (216 Wisc. p. 613, 258 N. W., p. 501) that the duty and correlative right "can

neither justly nor expediently be extended to any recovery for physical injuries sustained by one out of the range of ordinary physical peril as a result of the shock of witnessing another's danger." We think the case of *Spearman v. McCrary,* 4 Ala. App. 473, 58 So. 927, 928, is not to the contrary. The plaintiff herself was in the highway where the child was injured, and the court said that "a breach of duty owing to the plaintiff as a traveler on a public highway" was conceded. The case of *Frazee v. Western Dairy Products,* 182 Wash. 578, 47 P. 2d 1037, was a case where the shock was caused by apprehension that a runaway truck would strike the plaintiff's house and injure her son.

In *Palsgraf v. Long Island Railroad Co.,* 248 N. Y. 339, 162 N. E. 99, 100, 59 A. L. R. 1253, Judge Cardozo said: "The plaintiff sues in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another * * *." This case was cited and discussed in *State, use Aronoff, supra,* as well as the case of *Cote v. Litawa,* 96 N. H. 174, 176, 71 A. 2d 792, 794, 18 A. L. R. 2d 216, where it was said: "Although there is some authority for the proposition that one owes a duty to the world at large to refrain from conduct creating an unreasonable risk of injury to others * * * it has been held in our State, and apparently by the great majority of jurisdictions in this country, and we are of the opinion, that in actions for failure to use ordinary care, a duty towards the complaining party must be shown to exist." In that case the accident happened in front of the mother's house and she did not see it, but the child was immediately carried into the house by the automobile driver, causing shock. Recovery was denied.

The appellant relies strongly upon the case of *Hambrook v. Stokes* (1925) 1 K. B. 141. In that case a mother saw an unattended lorry run downhill on a narrow lane towards her children, whom she had just left. It ran into a house before it reached the plaintiff. Banks, L. J. thought she could recover for the shock

of what she saw, not from what a bystander told her, if the shock was due to a reasonable fear of immediate personal injury either to herself or to her children. Atkin, L. J. conceded that a breach of duty must be shown, but found it was admitted by the pleadings. He went on to say that there was a duty to avoid shock to a parent then present; he saw no reason in principle why recovery should not extend to a mere bystander. He took occasion to disapprove the *dictum of* Kennedy, J. in *Dulieu v. White*, (1901) 2 K. B. 669 that "the shock, where it operates through the mind, must be a shock which arises from a reasonable fear of immediate personal injury to oneself." Sargant, L. J., dissenting, thought the test was the personal peril to the plaintiff, and saw no basis for a distinction between a mother and mere bystanders in the lack of duty owed. In *Bowman v. Williams, supra,* Judge Parke quoted from the opinion of Atkin, L. J. denying that "the shock must be a shock which arises from a reasonable fear of immediate personal injury to oneself", but said (164 Md. p. 403, 165 A. p. 184) : "The instant case does not require the doctrine to be extended so far as is indicated by the opinion quoted * * *. Here there was imminent danger of physical contact that confronted the plaintiff * * *."

In *Hay v. Young,* (1943) A. C. 92, a woman suffered shock from hearing the crash of a collision between a motorcycle and another vehicle, forty-five feet from where she was standing, and from the sight of the dead cyclist immediately afterwards. She was not related to the dead man. On appeal, the Law Lords agreed that there was no breach of duty shown. Lord Thankerton said the plaintiff was "not in the area of potential danger". Discussing *Hambrook v. Stokes,* he thought the *dictum* of Atkin, L. J. was "too wide". Lord Russell of Killowen stated frankly that he preferred the dissent of Sargant, L. J. Lord Macmillan reserved his opinion on *Hambrook v. Stokes,* but remarked that the statement of the rule by Kennedy, J. had been followed in Scotland. Lord Wright said that he took the *dictum* of Atkin, L. J.

as applicable only to "persons so closely and directly affected by my act that I ought reasonably to have them in contemplation as being so affected when I am directing my mind to the acts or omissions which are called in question". In other respects he inclined to follow the *Hambrook* case. Lord Porter referred to the *Hambrook* case as "the high water mark reached in claims of the character now in question". He suggested that the case might be confined to its facts since leaving a vehicle unattended was "a potential danger to all those in the way". He thought the allegations did not raise a duty to persons not using the highway. "The duty is not to the world at large." The position of the House of Lords seems to be, therefore, that *Hambrook v. Stokes* rested on a concession of duty owed and the question as to the limits of the doctrine is still open. These and other cases are discussed in an exhaustive note in 18 A. L. R. (2) 220. See also *Prosser, Torts* § 34, p. 217; *Green,* 27 Ill. L. R. 761; and *Smith,* 30 Va. L. R. 193, 237.

We adopt the view set out in Section 312 (e) of the Restatement, with the possible qualification that once a duty is established damages need not be apportioned between fear for oneself and for others. We are not disposed to extend the doctrine of the *Bowman* case; indeed, we have indicated in *State, use Aronoff v. Baltimore Transit Co., supra,* that it should not be extended. We see no logical reason for holding that liability does not extend to bystanders or persons less closely related than a child or spouse, but may extend to a child or spouse, as indicated in the caveat in § 313. We think the operator of a motor vehicle on the highway is not liable to spectators in a place of safety off the highway for visible shock to them. If such a rule were adopted it would involve a tremendous extension of liability to the world at large, not justified by the best considered authorities. Our conclusion, of course, does not preclude action by the mother under our prototype of Lord Campbell's act for pecuniary loss caused by the negligent killing

of the children. We think the demurrer was properly sustained.

*Judgment affirmed, with costs.*

MARKELL, J., filed the following dissenting opinion, in which DELAPLAINE, J., concurred.

The question presented in this case is whether a mother can recover for nervous and mental injury caused by shock and fright from seeing her two children struck and killed before her eyes by an automobile negligently driven by defendants, while the mother was standing on the porch in front of her house, the children were standing across the street on a sidewalk or parkway, and the automobile jumped a curb and struck, tossed and killed them. As defendants might prefer to state the question, it is whether in the circumstances defendants owed any duty (apart from Lord Campbell's Act) to the mother not to injure her by shock and fright by negligently operating their automobile so as to put her in fear for the safety of her children, though not for her own safety.

One of the minimum practical advantages of the doctrine *stare decisis* is that, when it is practised, it puts an end to otherwise endless debate on a question of ideal abstract justice on which ideal justice—or universal opinion—is unattainable and it is more important that the question be settled than that it be settled right. In recent cases, not all strictly within the doctrine, but within its fringes, this court has reached different results on different questions, in one case with difference of opinion among the judges. *Mahnke v. Moore,* 197 Md. 61, 77 A. 2d 923; *State, use of Joyce v. Hatfield,* 197 Md. 249, 78 A. 2d 754; *Damasiewicz v. Gorsuch,* 197 Md. 417, 79 A. 2d 550; *State, use of Aronoff v. Baltimore Transit Co.,* 197 Md. 528, 80 A. 2d 13.

In 1888 in a case from Australia it was held, by the Judicial Committee of the Privy Council, that damages for a nervous shock or mental injury, caused by fright

at an impending collision ( which in fact was narrowly escaped), are too remote to be recovered. *Victorian Railways Commissioners v. Coultas,* 13 A. C. 222. This case was followed in New York in 1896 and in Massachusetts in 1897. *Mitchell v. Rochester Railway Co.,* 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781; *Spade v. Lynn and Boston Railroad Co.,* 168 Mass. 285, 47 N. E. 88, 38 L. R. A. 512. Meanwhile it was strongly disapproved in Ireland and in some states in this country, and by Sir Frederick Pollock and other eminent jurists, and later by the courts in England and Scotland. In the *Coultas* case and the *New York* and *Massachusetts* cases, there was little discussion of abstract law or justice. These decisions were based squarely on the public policy of avoiding a flood of fictitious litigation. About a year ago we said, "At the beginning of this century, the numerical weight of authority in this country supported the rule that a plaintiff cannot recover for nervous affections unaccompanied by contemporaneous physical injury." *Mahnke v. Moore, supra,* 77 A. 2d 926. Apparently in New York and Massachusetts this is still the law, but in practice has narrow scope, since exception from it of nervous or mental shock which directly causes physical injury, *e.g.,* fainting and consequent falls therefrom. *Cohn v. Ansonia Realty Co.,* 162 App. Div. 791, 148 N. Y. S. 39; *Comstock v. Wilson,* 257 N. Y. 231, 177 N. E. 431, 76 A. L. R. 676 (both cited in *Bowman v. Williams,* 164 Md. 397, 404, 165 A. 182, *infra*) ; *Wagner v. International Railway Co.,* 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1, (cited by Lord Wright in *Hay v. Young,* [1943] A. C. 92, 108). Immediately after the sentence just quoted we said, "In 1909, however, this Court adopted the rule that where the wrongful act complained of is the proximate cause of the injury and the injury ought to have been contemplated in the light of all the circumstances as a natural and probable cause thereof, the case should be left to the jury. *Green v. T. A. Shoemaker & Co.,* 111 Md. 69, 81, 73 A. 688, 23 L. R. A., N. S., 667." *Mahnke v. Moore, supra,* 77 A. 2d

**490**

926-927. It will be noted (*a*) that this statement of Maryland law since 1909 is more than could be said of New York or Massachusetts law, and (*b*) that what is said of contemplation of the natural and probable consequences of the wrongful act (italicized in a quotation of this sentence in *State use of Aronoff v. Baltimore Transit Co., supra,* 80 A. 2d 13, 14) is applicable (as it usually is) to either the question of proximate cause or the question of the duty to the plaintiff which makes the act wrongful as to the plaintiff.

In *Dulieu v. White,* [1901] 2 K. B. 669, before a Divisional Court consisting of Kennedy and Phillimore, JJ., it was held that damages which result from a nervous shock occasioned by fright unaccompanied by any actual impact may be recoverable in an action for negligence if physical injury has been caused to the plaintiff. The physical injury in the case was a miscarriage and other illness. In so holding each judge in his separate opinion reviewed and disapproved the *Coultas* case and the New York and Massachusetts cases above mentioned. Mr. Justice Kennedy in his opinion also uttered a *dictum,* which directly and indirectly is the basis of defendants' contentions in the instant case, "It is not, however, to be taken that in my view every nervous shock occasioned by negligence and producing physical injury to the sufferer gives a cause of action. There is, I am inclined to think, as least one limitation. The shock, where it operates through the mind, must be a shock which arises from a reasonable fear of immediate personal injury to himself. A has, I conceive, no legal duty not to shock B's nerves by the exhibition of negligence towards C, or towards the property of B or C. * * * In order to illustrate my meaning in the concrete, I say that I should not be prepared in the present case to hold that the plaintiff was entitled to maintain this action if the nervous shock was produced, not by the fear of bodily injury to herself, but by horror or vexation arising from the sight of mischief being threatened or done either to some other person, or to her own or her husband's property,

by the intrusion of the defendants' van and horses."
[1901] 2 K. B. 675, 676. Mr. Justice Phillimore expressed no opinion on this point.

In *Coyle v. Watson,* [1915] A. C. 1, 13, in the House of Lords, Lord Shaw said the *Coultas* case could "no longer be treated as a decision of guiding authority". In this respect the law in England had reached a point in 1915 which had been reached in Maryland in 1909. *Green v. Shoemaker, supra.*

*Hambrook v. Stokes Bros.,* [1925] 1 K. B. 141, was a suit under Lord Campbell's Act for death of the plaintiff's wife from a miscarriage and attendant illness caused by fright, not for her own safety but for the safety of her children, by a runaway truck on a public highway. A majority of the court (Bankes, L. J., and Atkin, L. J.) held that the action could be maintained and disapproved the *dictum* of Kennedy, J., in *Dulieu v. White, supra.* Lord Justice Sargant, dissenting, followed the *dictum* of Kennedy, J., and held the action could not be maintained. Lord Justice Bankes narrowed and summarized his opinion by saying, "* * * in my opinion the plaintiff would establish a cause of action if he proved to the satisfaction of the jury all the material facts on which he relies— namely, that the death of his wife resulted from the shock occasioned by the running away of the lorry, that the shock resulted from what the plaintiff's wife either saw or realized by her own unaided senses, and not from something which some one told her, and that the shock was due to a reasonable fear of immediate personal injury either to herself or to her children." [1925] 1 K. B. 152. It will be noted that this carefully chosen language would sustain liability in the instant case and denial of liability in *Cote v. Litawa,* 96 N. H. 174, 71 A. 2d 792, 18 A. L. R. 2d 216, cited in *State use of Aronoff v. Baltimore Transit Co., supra.*

In *Bowman v. Williams,* 164 Md. 397, 165 A. 182, the plaintiff recovered damages for nervous shock, without any physical impact, from fright for the safety of his young sons, caused by the defendant's truck, which came

down an icy hill, got out of control, crossed the curb and sidewalk and crashed into the foundation of the plaintiff's house, thrust itself into the basement and remained there embedded in the side of the house. The plaintiff's sons had been in the basement, the plaintiff was standing in the dining room, above the basement. The judgment for the plaintiff was affirmed, in an exhaustive opinion by Judge Parke, which fully covered the case on principle and on authority. The opinion says that "the plaintiff * * * had visible reason to apprehend that the impending peril * * * would * * * inflict the threatened physical injury upon his children in the basement and himself in the dining room * * *. There was no basis to differentiate the fear caused the plaintiff for himself and for his children, because there is no possibility of division of an emotion which was instantly evoked by the common and simultaneous danger of the three." 164 Md. 403, 165 A. 184. Manifestly the danger of physical injury to the plaintiff himself was not great, and there is no indication that fear of injury to himself was an appreciable factor.

In the course of the opinion in *Bowman v. Williams* this court said [164 Md. 401, 165 A. 183], "When fear exists, the nervous and physical reactions, although probably differing in degree, are fundamentally identical, whether the fear is purely subjective, as when it is for the victim's own safety, or is objective, as when the fear is for the victim's wife, child, relative, friend, or even a stranger. * * * These familiar illustrations demonstrate that, the effect of fright being impredicable, there is neither logic nor reason to hold, with some of the cases, that a distinction is to be taken, so that, if a party suffer an injury, as loss of health, of mind, or of life, through fear of safety for self, a recovery may be had for the negligent act of another; but may not recover under similar circumstances, if the fear be of safety for another. * * * There is, therefore, on principle and weight of argument, no reason to deny to the plaintiff a right to recover in this action, because of the fact that the injury

might have arisen from fear for the safety of the plaintiff's children rather than for his own. * * * In the last-cited case [*Hambrook v. Stokes Bros.*] Atkin, L. J., in reviewing the cases, said: 'I can find no principle to support the self-imposed restriction stated in the judgment of Kennedy, J., in *Dulieu v. White & Sons* that the shock must be a shock which arises from a reasonable fear of immediate personal injury to oneself. It appears to me to be inconsistent with the decision in *Pugh v. London, Brighton & South Coast Ry. Co.* and with the decision in *Wilkinson v. Downton,* in neither of which cases was the shock the result of the apprehension of the injury to the plaintiff. It would result in a state of the law in which a mother shocked by fright for herself would recover, while a mother shocked by her child being killed before her eyes could not, and in which a mother traversing the highway could recover if shocked by fright for herself, while if she could be cross-examined into an admission that the fright was really for her child she could not. In my opinion such distinctions would be discreditable to any system of jurisprudence in which they formed part.' *Dulieu v. White & Sons* (1901) 2 K. B. 669; *Pugh v. London etc. Ry. Co.* (1896), 2 Q. B. 248; *Wilkinson v. Downton* (1897) 2 Q. B. 57. The instant case does not require the doctrine to be extended so far as is indicated by the opinion quoted, and this decision is confined to the facts of the record at bar, which present a somewhat different situation. * * * In Maryland the decision in *Green v. T. A. Shoemaker & Co.,* 111 Md. 69, 76-83, 73 A. 688, and followed in *Balto. & O. R. Co. v. Harris,* 121 Md. 254, 268-270, 88 A. 282; *Patapsco Loan Co. v. Hobbs,* 129 Md. 9, 16, 98 A. 239, and *Great Atlantic & Pacific Tea Co. v. Roch,* 160 Md. 189, 192, 153 A. 22, have settled the principle that a plaintiff can sustain an action for damages for nervous shock or injury caused, without physical impact, by fright arising directly from defendant's negligent act or omission, and resulting in some clearly apparent and substantial physical injury, as manifested

by an external condition or by symptons clearly indicative of a resultant pathological, physiological, or mental state. In these opinions, this court has fully stated and justified its position, which is in harmony with the modern trend of decision. [Citing the *Law Quarterly Review, Bohlen* and many cases.] It follows from a consideration of the Maryland decisions and their application to this record that there was legally sufficient evidence for the case to go to the jury, and the court committed no error in rejecting the defendants' first prayer. The fifth prayer of the defendants proceeded upon the theory that the testimony raised an issue of fact whether or not the father's nervous injury was due to fear for self or for his two children, and the court's action in rejecting this prayer was sound. In the first place, there was no legally sufficient evidence to support the submission of such an issue; and, secondly, the prayer was objectionable on the ground that, under the circumstances shown by the record, the father could have recovered whether this fright was for the safety of his children or of both himself and the children."

Counsel has presented an able argument, based on the distinction between the question of proximate cause and the question of existence of a duty from defendant to plaintiff, against the authority of *Bowman v. Williams,* as a precedent for the plaintiff in the instant case, and specifically against the quotation of the opinion of Atkin, L. J., as a rejection by this court of the *dictum* of Kennedy, J. It is not necessary to pursue this argument into its details. There is a difference between the question of proximate cause and the question of duty, but not as great a difference as defendant argues. That the element of foreseeability has not the same, but a similar place in each question, has been recognized by this court as recently as *Mahnke v. Moore,* supra, and *State use of Aronoff v. Baltimore Transit Co.,* supra, and as long ago as *Green v. Shoemaker, supra.* Lord Justice Sargant, whose dissenting opinion seems to be defendant's principal reliance, in that opinion said,

referring to an unreported case, "That decision seems to me unquestionably right, though I should prefer, with Kennedy, J., to put it not on the ground that the harm was too remote a consequence of the negligence, but on (what is often practically equivalent) a consideration of the extent of the duty of the defendant towards the plaintiff and others on and near the highway." *Hambrook v. Stokes Bros., supra,* pages 162-163.

It may be that consistency is the hobgoblin of little minds, but ordinarily it is more important (because more feasible) for a court to maintain a semblance of consistency among its own decisions than to strain after ideal justice. Twenty years ago this court held a food store liable to a customer for causing shock, through a negligent "mistake" the court said that if the "mistake" was an intentional practical joke, as the evidence strongly indicated, the proprietor would not have been liable), by exposing her to a view of the dead body of a rat. *Great Atlantic & Pacific Tea Co. v. Roch,* 160 Md. 189, 153 A. 22. Can the same court now hold that the owner or driver of an automobile owes no duty to a mother of children on a public highway to refrain from shocking her by negligently hurling them into eternity before her eyes? Can it now say that in *Bowman v. Williams* the result would have been different if the plaintiff had expressly testified that he had no fear for his own safety and the children had been on the sidewalk across the street instead of in the house? Lord Atkin, in the passage quoted in *Bowman v. Williams* pointed out the incongruity of allowing recovery to a mother who feared only for herself and denying it to one who feared for her children.

In respect of the *dictum* of Kennedy, J., counsel stresses the reservation in the opinion of this court after the quotation from *Hambrook v. Stokes Bros.,* and emphasizes (I think over emphasizes) certain references to the pleadings in that case. Reservation of opinion on unnecessary questions ("assuming without deciding") is a part of judicial prudence. But courts cannot

foretell the consequences of their own decisions or reservations. The logic of judicial action may carry a decision further than was expected, and may sweep aside reservations. *Hambrook v. Stokes Bros.,* was the only case quoted in *Bowman v. Williams.* The only point on which it was quoted was the rejection by Atkin, L. J., of the *dictum* of Kennedy, J. The opinion of this court contained statements by this court which were more at variance with the *dictum* of Kennedy, J. than was the quotation from Atkin, L. J. *Supra.* After Judge Parke had already expressed (in effect) this court's disapproval of the *dictum*, it is beyond permissible construction to say that he meant, in quoting the disapproval by Atkin, L. J., of the *dictum,* to approve the *dictum* and disapprove the quoted disapproval of it.

Immediately after the two sentences above quoted from *Mahnke v. Moore, supra,* we said [197 Md. 69, 77 A. 2d 927], "The law is now established in Maryland, in accordance with the modern trend of the decisions, that 'a plaintiff can sustain an action for damages for nervous shock or injury caused without physical impact, by fright arising directly from defendant's negligent act or omission, and resulting in some clearly apparent and substantial physical injury as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state.' *Bowman v. Williams,* 164 Md. 397, 404, 165 A. 182, 184." It is said that *Mahnke v. Moore* is distinguishable from *Bowman v. Williams* and from the instant case, in that it was a case of wilful, not negligent, wrong. We might have made such distinction, but we preferred (properly I think) to put our decision on the basis of *Bowman v. Williams.* It may be questioned whether the murder and suicide committed by the frantic father in the presence of his four-year-old child was any more a wilful wrong against the child than "homicide by automobile" committed by reckless drivers on the highway (and unlawfully on the sidewalk), who give no thought for the life or limb of children or nerves or affections of mothers,

is a wilful wrong. I think the instant case is governed by *Bowman v. Williams* and *Mahnke v. Moore* and the earlier cases (from 1909 down) reviewed in *Bowman v. Williams*.

In *State, use of Aronoff v. Baltimore Transit Co., supra,* we held that there could be no recovery for death caused by shock from fear at injury to decedent's property. The opinion fully reviews the pertinent authorities. It need not be quoted, but it may be noted (*a*) that the opinion quoted *Bowman v. Williams* (principally parts quoted above) and cited *Hambrook v. Stokes Bros.* with apparent approval, and did not quote or cite (*b*) the *dictum* of Kennedy, J. or (*c*) *Waube v. Warrington*, 216 Wisc. 603, 258 N. W. 497, 98 A. L. R. 394, which had been cited to us by counsel and is now relied on by defendant. The *dictum* of Kennedy, J. and the *Wisconsin* case are not consistent with our own decisions in *Bowman v. Williams* and *Mahnke v. Moore*. The *dictum* of Kennedy, J., if it were Maryland law, would have decided both the *Aronoff* case and the instant case for the defendants.

In *Hay v. Young*, [1943] A. C. 92, the House of Lords, five Law Lords sitting, unanimously held that there could be no recovery for shock at the death of a total stranger by collision with an automobile on a public street. The Lords reserved opinion on the question in *Hambrook v. Stokes Bros*. Two of the five expressed a tentative preference, "as now advised", for the majority opinions, and a third was not prepared to accept the *dictum* of Kennedy, J. "as a conclusive test in all cases". One Lord expressed a similar tentative preference for the minority opinion of Sargant, L. J. It would be presumptuous to venture to predict the future disposition of a question on which the House of Lords has reserved opinion. It may be permissible to observe that there is no numerical indication that the *dictum* of Kennedy, J., is likely to be resurrected.

In this tedious superficial review of authorities I have not attempted to go beneath the surface and discuss

the basic questions of principle which have been debated by judges and and jurists for sixty years. The purpose has been solely "from a consideration of the Maryland decisions" and their application to the instant case, to ascertain whether the Maryland decisions furnish the answer to the question in the instant case. I think that they do, and that *Bowman v. Williams* and *Mahnke v. Moore* are conclusive.

This is the third case of injury by shock which we have decided in a little more than a year. The other two were unanimous decisions, participated in by all the present members of this court. On the question of proximate cause—or existence of a duty—*Mahnke v. Moore* was not decided without consciousness of possibilities of abuse in such cases—*e. g.,* possible attempts to "redistribute wealth" as between children and illegitimate children. We were satisfied that that case was governed by *Bowman v. Williams.* This case is governed by *Bowman v. Williams* and *Mahnke v. Moore.*

Judge Delaplaine authorizes me to say that he concurs in this opinion.